**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| SHANE M. C.,<br><br>Plaintiff,<br><br>v.<br><br>FRANK BISIGNANO,<br>Commissioner of Social Security,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 25-cv-00531-SH |

**OPINION AND ORDER**

Pursuant to 42 U.S.C. § 405(g), Plaintiff Shane M. C. seeks judicial review of the decision of the Commissioner of Social Security (the "Commissioner") denying his claim for benefits under Title II of the Social Security Act (the "Act"), 42 U.S.C. §§ 401–434. In accordance with 28 U.S.C. § 636(c), the parties have consented to proceed before a United States Magistrate Judge. For reasons explained below, the Court affirms the Commissioner's decision denying benefits.

## I. Disability Determination and Standard of Review

Under the Act, a "disability" is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The impairment(s) must be "of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." *Id.* § 423(d)(2)(A).

Social Security regulations implement a five-step sequential process to evaluate disability claims. 20 C.F.R. § 404.1520. To determine whether a claimant is disabled, the Commissioner inquires into: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant suffers from a severe medically determinable impairment(s); (3) whether the impairment meets or equals a listed impairment from 20 C.F.R. Pt. 404, Subpt. P, App. 1; (4) considering the Commissioner's assessment of the claimant's residual functional capacity ("RFC"), whether the claimant can still do his past relevant work; and (5) considering the RFC and other factors, whether the claimant can perform other work. *Id.* § 404.1520(a)(4)(i)–(v). Generally, the claimant bears the burden of proof for the first four steps. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). At the fifth step, the burden shifts to the Commissioner to provide evidence that other work the claimant can do exists in significant numbers in the national economy. 20 C.F.R. § 404.1560(c)(2). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988).

Judicial review of the Commissioner's final decision is limited to determining whether the Commissioner has applied the correct legal standards and whether the decision is supported by substantial evidence. *See Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). The "threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019). It is more than a scintilla but means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citation modified). The Court will "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met," *Grogan*, 399 F.3d at 1262, but it will

neither reweigh the evidence nor substitute its judgment for that of the Commissioner, *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008). Even if the Court might have reached a different conclusion, the Commissioner's decision stands if it is supported by substantial evidence. *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

## II. Background and Procedural History

Plaintiff protectively filed an application for Title II benefits on July 28, 2022. (R. 14, 231–32.) Plaintiff alleged he has been unable to work since June 24, 2022,[1] due to conditions including back pain, leg pain, heart issues, high blood pressure, diabetes, hypothyroidism, and high cholesterol. (R. 14, 309.) Plaintiff was 53 years old on the date of the Administrative Law Judge's ("ALJ") decision. (R. 24, 231.) Plaintiff has a high school education and past relevant work as a street department laborer and a composite job comprised of a water truck driver and a heavy equipment operator. (R. 310, 67–68.)

Plaintiff's claim was denied initially and upon reconsideration. (R. 97–101, 103–06.) Plaintiff then requested and received a hearing before an ALJ. (R. 107–08, 30–72.) The ALJ denied benefits and found Plaintiff not disabled. (R. 14–24.) The Appeals Council denied review on July 31, 2025 (R. 1–6), rendering the Commissioner's decision final, 20 C.F.R. § 404.981. Plaintiff now appeals.

## III. The ALJ's Decision

In his decision, the ALJ found Plaintiff met the insured requirements for Title II purposes through September 30, 2026. (R. 16.) The ALJ then found at step one that Plaintiff had not engaged in substantial gainful activity since his alleged onset date. (*Id.*)

[1] Plaintiff's application indicates he "became unable to work because of [his] disabling condition on April 19, 2019" (R. 231), but his disability report notes he stopped working on June 24, 2022 (R. 309). The ALJ treats June 24, 2022, as Plaintiff's disability onset date (R. 14), as does Plaintiff's brief (Dkt. No. 8 at 1).

At step two, the ALJ found Plaintiff to have severe impairments of (1) degenerative disc disease and stenosis of the lumbar spine; (2) coronary artery disease with valve repair and replacement; (3) status-post left ankle injury with retained hardware; and (4) obesity. (*Id.*) The ALJ found other impairments non-severe, including Plaintiff's anxiety and depressive disorder. (R. 17.) At step three, the ALJ found Plaintiff's severe impairments did not meet or equal a listed impairment. (R. 18.)

The ALJ then determined that Plaintiff had the RFC to perform light work with additional exertional, postural, and environmental limitations, but with no mental or non-exertional limitations. (*Id.*) The ALJ provided a recitation of the evidence that went into this finding. (R. 18–22.) At step four, the ALJ found Plaintiff unable to perform his past relevant work. (R. 22.) Based on the testimony of a vocational expert ("VE"), however, the ALJ found at step five that Plaintiff could perform other work that existed in significant numbers in the national economy, such as mail room clerk, ticket seller, and electronics assembler. (R. 23–24.) Accordingly, the ALJ concluded Plaintiff was not disabled. (R. 24.)

## IV. Issues

On appeal, Plaintiff asserts several points of error, arguing (1) the RFC and step-five hypothetical were flawed because the ALJ failed to account for Plaintiff's mental impairments, pain, and pain-related non-exertional limitations (Dkt. No. 8 at 3–8); (2) the ALJ failed to properly evaluate the effect of Plaintiff's obesity on his mental impairments (*id.* at 11–14); and (3) the step-five findings were flawed because the ALJ failed to consider conflicts in the VE testimony that would arise were additional limitations included in the RFC (*id.* at 8–11). The Court finds no error.

## V. Analysis

### A. The ALJ's Consideration of Non-Exertional Limitations

Plaintiff first contends that the ALJ's RFC and step-five hypothetical were flawed, as the ALJ did not "adequately account for Claimant's pain and failed to include limitations" the ALJ "found with regard to Claimant's mental impairments and functioning." (*Id.* at 3.) Plaintiff appears to be referencing the ALJ's treatment of Plaintiff's non-severe depression and anxiety, as well Plaintiff's reports of difficulties sleeping and concentrating due to his pain and related medication. (*Id.* at 3, 5.)

#### 1. Plaintiff's Anxiety and Depression

The Court finds the ALJ adequately considered the evidence available for review regarding Plaintiff's anxiety and depression. Mental impairments are discussed in multiple steps of the ALJ's decision, and the Court will address them in order.

##### a. Psychiatric Review Technique—Generally

At step two, the regulations prescribe a "special technique" to determine the severity of mental impairments. *See Wells v. Colvin*, 727 F.3d 1061, 1064 (10th Cir. 2013). This technique rates degrees of limitation in certain areas. *See* 20 C.F.R. § 404.1520a(b)–(d). The resulting degree-of-limitation ratings are often referred to as "paragraph B" findings or criteria. *See, e.g.*, Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *4 (July 2, 1996) ("[t]he psychiatric review technique . . . requires adjudicators to assess an individual's limitations . . . from a mental impairment(s) in categories identified in the 'paragraph B' . . . of the adult mental disorders listings"). Plaintiff does not take issue with the finding that Plaintiff had "no more than 'mild'" limitations in paragraph B categories.[2]

---

[2] A "mild" rating generally results in an impairment being designated "not severe." 20 C.F.R. § 404.1520a(d)(1).

(R. 17.) Instead, Plaintiff takes issue with the ALJ's consideration of these mental limitations at the RFC stage.

**b. RFC Assessment**

The "paragraph B" limitations are not an RFC assessment. *See* SSR 96-8p, at *4. The RFC assessment involves consideration of a claimant's impairments and related symptoms, and whether those symptoms may cause physical or mental limitations that affect what the claimant can do in a work setting. 20 C.F.R. § 404.1545(a)(1). The RFC is what's left—"the most [the claimant] can still do despite [his] limitations." *Id.*

This consideration is a function-by-function assessment of an individual's ability to do work-related activities. SSR 96-8p, at *3. Such analysis includes "a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence," and explains "how any material inconsistencies or ambiguities in the evidence . . . were considered and resolved." *Id.* at *7. The RFC is "based on all the relevant medical and other evidence" in the record.[3] 20 C.F.R. § 404.1520(e). Such evidence includes the claimant's medical history; medical signs and laboratory findings; the effects of treatment; reports of daily activities; lay evidence; recorded observations; medical source statements; and effects of symptoms. SSR 96-8p, at *5.

Compared to the initial determination regarding severity of a claimant's mental impairments, the "RFC assessment used at steps 4 and 5 . . . requires a more detailed

[3] That said, the ALJ is under no obligation to "discuss every piece of evidence." *Clifton v. Chater*, 79 F.3d 1007, 1009–10 (10th Cir. 1996). Rather, in addition to the evidence supporting his decision, the ALJ must discuss "the uncontroverted evidence he chooses not to rely upon" and the "significantly probative evidence he rejects." *Id.* at 1010; *see also id.* at 1009 (explaining "[t]he record must demonstrate that the ALJ considered all of the evidence").

assessment" than at steps 2 and 3, *id.* at *4, focusing on work-related mental activities like "the abilities to: understand, carry out, and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, co-workers and work situations; and deal with changes in a routine work setting," *id.* at *6. At the RFC stage, an ALJ considers "the combined effect of all of the claimant's medically determinable impairments, *whether severe or not severe*." *Wells*, 727 F.3d at 1065 (citing 20 C.F.R. § 404.1545(a)(2)).

So, once an ALJ finds impairments at step two—severe or not—he is prohibited from ignoring them and must "consider the combined impact of the impairments throughout the disability determination process." 20 C.F.R. § 404.1523(c); *see also* SSR 96-8p, at *5 ("In assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'").

### c. Consideration of Mental Impairments

Plaintiff emphasizes that the "ALJ found Claimant has the medically determinable impairments of anxiety disorder and depressive disorder" and contends that the ALJ "admitted" they caused mild limitations. (Dkt. No. 8 at 4.) According to Plaintiff, "mild limitations are to be included in hypothetical questions and in the RFC." (*Id.*) But even "moderate difficulties" in paragraph B functioning do not "necessarily translate to a work-related functional limitation for the purposes of the RFC assessment." *Beasley v. Colvin*, 520 F. App'x 748, 754 (10th Cir. 2013).[4] Therefore, the question is whether the ALJ adequately assessed the evidence required by the RFC analysis. Here, the ALJ did so.

4 Unpublished decisions are not precedential, but they may be cited for their persuasive value. 10th Cir. R. 32.1(A).

After completing the analysis at steps two and three, the ALJ noted that the "mental [RFC] assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment" and that the later RFC discussion "reflects the degree of limitation the undersigned has found in the 'paragraph B' mental function analysis." (R. 17.) In many cases, this would be insufficient by itself. *See Marquita C. M. v. O'Malley*, No. 23-CV-00158-SH, 2024 WL 1256337, at *3–4 (N.D. Okla. Mar. 25, 2024) (finding ALJ failed to account for reported mental symptoms and medication; failed to mention relevant function reports; and ignored mental impairments in consideration of the medical evidence).

Here, however, the ALJ was reviewing an application that alleged disability based solely on non-mental impairments, and the ALJ did not ignore evidence of Plaintiff's mental health treatment. Instead, the ALJ considered that mental health treatment in the record was minimal; that "mental status examinations have remained relatively unremarkable"; and that Plaintiff had "never required acute mental health treatment." (R. 17 (citing medical records).) The ALJ also considered the function reports from Plaintiff and his wife, along with Plaintiff's hearing testimony. (*Id.* (citing R. 327–334 & 353–360, and hearing testimony).) Such evidence contained representations about Plaintiff's ability to follow instructions "very well" (R. 332, 358); his lack of problems with authority figures or getting along with others (R. 333, 358); and his ability to handle changes in routines somewhat well, with fatigue (R. 333, 359).

While the ALJ discussed this evidence in the context of steps two and three, he also explicitly stated he considered it in the later steps of the sequential analysis, and the Court can follow the ALJ's reasoning in deciding to include no mental limitations in the RFC. Reversal is not required. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012)

(where courts "can follow the adjudicator's reasoning" and "can determine that correct legal standards have been applied, merely technical omissions in the ALJ's reasoning do not dictate reversal").

### 2. Pain and Non-Exertional Limitations

Similarly, the ALJ adequately considered Plaintiff's pain and resulting impairments.

#### a. Symptom Analysis

A plaintiff's symptoms, including pain, are part of the non-medical evidence considered in an RFC assessment. *See* SSR 16-3p, 2017 WL 5180304, *2 (Oct. 25, 2017); *see also* SSR 96-8p, at *5 (evidence to be considered in the RFC assessment includes the "effects of symptoms, including pain"). "Symptoms" are defined as a claimant's "own description of [his] physical or mental impairment." 20 C.F.R. § 404.1502(i). When evaluating symptoms, the ALJ uses a two-step process. *See* SSR 16-3p, at *2; *see also* 20 C.F.R. § 404.1529.

First, the medical signs or laboratory findings must show the existence of medical impairments that result from anatomical, physiological, or psychological abnormalities and could reasonably be expected to produce the symptoms alleged. 20 C.F.R. § 404.1529(b). Second, once such impairments are established, the ALJ must then evaluate the intensity and persistence of the symptoms, so he can determine how the symptoms limit the claimant's capacity for work. *Id.* § 404.1529(c)(1).

Factors the ALJ considers include: (i) the claimant's daily activities; (ii) the location, duration, frequency, and intensity of symptoms; (iii) precipitating and aggravating factors; (iv) the type, dosage, effectiveness, and side effects of medications; (v) treatment aside from medication; (vi) any other measures the claimant has used to

relieve symptoms; and (vii) other factors concerning functional limitations and restrictions due to symptoms. *Id.* § 404.1529(c)(3)(i)–(vii). The ALJ's symptom findings "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Cowan v. Astrue*, 552 F.3d 1182, 1190 (10th Cir. 2008) (citation modified). However, a "formalistic factor-by-factor recitation of the evidence" is not required where the ALJ states "the specific evidence he relies on" in the evaluation. *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000). Because subjective symptom findings are "peculiarly the province of the finder of fact," reviewing courts should "not upset such determinations when supported by substantial evidence."[5] *Cowan*, 552 F.3d at 1190 (citation modified).

That is not to say, however, that the ALJ may simply make "a single, conclusory statement" that the individual's symptoms have been considered or that the claimant's statements are/are not consistent. SSR 16-3p, at *10. The ALJ's decision "must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." *Id.*

**b. Pain Symptoms**

The Court finds the ALJ adequately assessed the regulatory factors when considering Plaintiff's reports of pain. *See* 20 C.F.R. § 404.1529(c)(3)(i)–(vii). Regarding daily activities, the ALJ considered reports that, prior to Plaintiff's heart surgery, he could

---

[5] This is particularly true given courts cannot reweigh evidence or substitute their judgment for that of the Commissioner, *Bowman*, 511 F.3d at 1272, even if they would have reached a different conclusion, *White*, 287 F.3d at 908.

use a riding lawn mower, but not a push mower; could prepare complete meals; performed routine household chores, drove, and shopped for groceries; and managed his personal care without problems. (R. 19, 21–22.) Regarding the location, duration, frequency, and intensity of symptoms, the ALJ considered Plaintiff's report that back and leg pain necessitated certain positional and exertional limitations—at times to the point he was unable to leave home—but that objective exams showed no gait abnormalities, range of motion deficits, muscle weakness, or sensory abnormalities, with only ongoing tenderness upon palpitation of the lumbar spine being noted. (R. 19–20.) Regarding precipitating and aggravating factors, the ALJ considered Plaintiff's reports that activities such as sitting caused him back pain, and that the weather also affected his pain level. (R. 19.) Yet, the ALJ also considered Plaintiff's use of pain medication, where Plaintiff indicated the medication helped with his ankle symptoms and increased his ability to sit for longer stretches; that, at times, his pain has been adequately controlled with medication; and that, overall, his pain has been managed conservatively with little changes to his medication regimen. (R. 19–20.) As for treatment aside from medication and other measures Plaintiff used to relieve pain, the ALJ considered Plaintiff's indication that stretching helped his ankle symptoms and that he elevated his feet throughout the workday. (*Id.*)

Only after an evaluation of this evidence did the ALJ conclude that "claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record," and that "the claimant could perform a range of light work with postural limitations . . . ." (*Id.*) Plaintiff is simply asking the Court to reweigh the evidence and come to a different conclusion. The Court declines to do so.

**c. Other Symptoms**

Plaintiff also argues that the ALJ should have included RFC limitations relating to his difficulty concentrating; interrupted sleep; interference with eating out, socializing, and driving; difficulty walking, standing, and lifting; and need to recline, lie down, and take frequent breaks. (Dkt. No. 8 at 7.)

Many of these are limitations that the ALJ expressly considered, such as Plaintiff's ability to stand or walk. (*See, e.g.*, R. 20.) Others are activities that the ALJ discussed when considering Plaintiff's subjective reports. (R. 21 (driving and shopping).) The remaining reported difficulties—such as difficulty concentrating and sleeping—derive from the function reports the ALJ considered at steps two and three (R. 17) and at the RFC stage (R. 21–22). The ALJ discussed Plaintiff's reports of pain and medication side effects (R. 19–21), but he did not explicitly discuss any resulting difficulty sleeping or concentrating.[6] An ALJ is not, however, required to discuss every piece of evidence, just consider it, and Plaintiff has failed to show evidence the ALJ chose not to rely on or otherwise rejected that should have been discussed. *See Clifton*, 79 F.3d at 1009–10. The Court finds no error.

**3. Failure to Order a Consultative Examination**

In passing, Plaintiff notes the ALJ "did not obtain consultative examinations to evaluate Claimant's exact ranges of motion, physical and mental abilities, and full limitations." (Dkt. No. 8 at 6.) If this is an allegation of error, it is unsupported by any legal argument and need not be considered. In any event, Plaintiff was represented by counsel at the hearing, who did not identify areas that required further investigation or

[6] The ALJ did discuss Plaintiff's general abilities to concentrate. (*See* R. 17.)

otherwise challenge the sufficiency of the evidence in these areas. Plaintiff has shown no error. *See Hawkins v. Chater*, 113 F.3d 1162, 1166–67 (10th Cir. 1997); *see also id.* at 1168 ("In the absence of such a request by counsel, we will not impose a duty on the ALJ to order a consultative examination unless the need for one is clearly established in the record.").

**B. Evaluation of Plaintiff's Obesity and Mental Impairments**

Plaintiff next argues the ALJ erred in his consideration of Plaintiff's obesity. (Dkt. No. 8 at 11–14.) Plaintiff does not dispute that the ALJ considered obesity in combination with Plaintiff's physical impairments; instead, he argues the ALJ ignored obesity in the context of his mental impairments. (*Id.* at 11.)

**1. SSR 19-2p—Generally**

"[W]hen established by objective medical evidence," obesity may constitute a medically determinable impairment that "may or may not increase the . . . functional limitations of the other impairment(s)." SSR 19-2p, 2019 WL 2374244, at *2 (May 20, 2019). ALJs "must consider the limiting effects of obesity when assessing a person's RFC." *Id.* at *4. Because the "combined effects of obesity with another impairment(s) may be greater than the effects of each of the impairments considered separately," ALJs "consider all work-related physical and mental limitations, whether due to a person's obesity, other impairment(s), or combination of impairments." *Id.* That said, "general assumptions about the severity or functional effects of obesity combined with another impairment(s)" will not be made; each case is evaluated based on the information in that case's record. *Id.*

**2. Interaction with Mental Impairments**

Contrary to Plaintiff's arguments, the ALJ provided analysis of "how, if at all, . . . obesity would impact Claimant's ability to perform the mental demands of competitive work" (Dkt. No. 8 at 13)—with an emphasis on "if at all."

> The undersigned has also considered the effects of the claimant's obesity with a BMI of 40.61 kg/m2 in accordance with SSR 19-2p (Exhibit 5F/12). While the claimant did not allege any limitations related to his weight, it reasonable to assume that his elevated BMI would exacerbate his mobility issues as well as his ankle and back pain. As such, the limitations to standing/walking no more than four hours during the workday account for any added limitations due to the claimant's weight. Further limitations would not be consistent with the record. Among other things, the claimant maintains a normal gait without use of an assistive device (Exhibits 4F; 5F; 9F; Hearing Testimony).

(R. 21 (emphasis added).)

As required, the ALJ explained how he reached his conclusion regarding Plaintiff's obesity—noting it would likely exacerbate exertional limitations, but that further limitations were unsupported. Beyond this, Plaintiff points to no part of the record that indicates his obesity limited him mentally in any way, or that it exacerbated his anxiety or depression. As such, the Court finds no reason to discount the ALJ's finding that further RFC limitations based on Plaintiff's obesity were unnecessary.

**C. Alleged Conflicts at Step Five**

Lastly, Plaintiff submits step-five arguments that rely on the Court agreeing with his previous contentions.

First, Plaintiff contends the "ALJ cannot rely on the [VE's] testimony because the hypothetical question was flawed" due to the ALJ's failure to properly evaluate the evidence, as discussed above. (Dkt. No. 8 at 8.) The Court has found the ALJ adequately considered this evidence. There was no error, as an ALJ may rely on the testimony of a

VE to satisfy his step-five burden so long as all RFC limitations are reflected in the hypothetical question. *See Qualls*, 206 F.3d at 1373.[7]

Second, Plaintiff argues that "if the ALJ had properly included limitations from Claimant's proven mental impairments and pain," then "he would not have found that Claimant can perform the jobs listed" at step five. (Dkt. No. 8 at 9 (emphasis added).) As the Court has rejected any error in the RFC, this argument also fails.

## VI. Conclusion

For the foregoing reasons, the ALJ's decision finding Plaintiff not disabled is AFFIRMED.

**SO ORDERED** this 30th day of September, 2026.

SUSAN E. HUNTSMAN, MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT

[7] In *Qualls*, the court found that where the ALJ "propounded a hypothetical question to the VE that included all the limitations the ALJ ultimately included in his RFC assessment," "the VE's answer to that question provided a proper basis for the ALJ's disability decision." *Id.*